IT IS HEREBY FURTHER AD-JUDGED, ORDERED, AND DECREED that there be judgment against all plaintiffs and in favor of defendant the M/V ROBERT N. STOUT *in rem*, dismissing plaintiffs' claim against it without prejudice for lack of *in rem* jurisdiction.

New Orleans, Louisiana, this 21st day of June, 1989.

John B. Gooch, Jr., Philip A. Fant, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for plaintiff.

Michael M. Simpson, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Conrad S.P. Williams, III, New Orleans, La., for defendant.

## COMMUNITY COFFEE CO., INC.

v.

## M/S KRITI AMETHYST.

Civ. A. No. 87–4528.

United States District Court,
E.D. Louisiana.

June 22, 1989.

## OPINION AND ORDER

BEER, District Judge.

Defendant Companhia Maritima Nacional ("CMN") received and loaded onto the M/S KRITI AMETHYST, two sealed containers of coffee in Santos, Brazil. According to the bills of lading that CMN issued, each container contained 275 bags of coffee destined for Community Coffee Co., Inc. ("Community") in the United States.

After completing its voyage, the vessel docked at the Nashville Avenue Wharf in New Orleans. At that time, an agent of CMN, Ryan–Walsh Stevedoring Co., Inc. ("Ryan–Walsh"), inspected the containers and noted that the original seals were intact. It then discharged the containers from the vessel, mounted them on two chassis, and stored them in a relatively unsecured area.

Nearly three weeks later, the coffee resumed its journey. Saia Motor Freight Line, Inc. ("Saia") picked up the containers from Ryan–Walsh to truck them to Community. When it did so, Saia discovered that the original container seals were missing. Nevertheless, Saia applied new seals,

weighed the containers, and proceeded on to Community's plant. Once the containers arrived, Community opened them expecting to find 275 bags of coffee in each container. But each contained only 105 bags. Thus, each was short 170 bags.

Community sued (1) the M/S KRITI AMETHYST, (2) the vessel's owner, Arbyx Amethyst Shipping Co., S.A. ("Arbyx"), and (3) the vessel's charterer, CMN, to recover for the cargo shortage. Seeking indemnity and contribution, Arbyx impleaded Ryan–Walsh and Saia as third party defendants under Rule 14(a). CMN then filed cross-claims for indemnity and contribution against Ryan–Walsh and Saia. *See* Fed.R.Civ.P. 13(g) (permitting cross-claims).

The Federal Rules clearly permit Arbyx's and CMN's claims for indemnity and contribution against Ryan–Walsh and Saia. *See* Fed.R.Civ.P. 14(a) & 13(g). However, it is uncertain whether those claims are jurisdictionally proper. Arbyx and CMN presumably base jurisdiction for these claims on ancillary jurisdiction.[1] Indeed, ancillary jurisdiction generally applies to Rule 14(a) indemnity and contribution claims. But this may no longer be true after the Supreme Court's recent opinion in *Finley v. United States*, — U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). That decision arguably forecloses the applicability of ancillary jurisdiction to indemnity and contribution third party claims. If so, third party defendants Ryan–Walsh and Saia may have to be dismissed for lack of federal subject matter jurisdiction.

### I. *Opinion*

Courts have long applied the doctrine of ancillary jurisdiction to third party claims for indemnity and contribution. *See, e.g., Field v. Volkswagenwerk AG*, 626 F.2d 293, 298–99 (3d Cir.1980); *Rogers v. Aetna Cas. & Sur. Co.*, 601 F.2d 840 (5th Cir.

1979); *see also, e.g., May's Family Centers, Inc. v. Goodman's Inc.*, 104 F.R.D. 112 (N.D.Ill.1985); *Ahern v. Gaussoin*, 104 F.R.D. 37 (D.Or.1984). Since the Supreme Court's 1926 opinion in *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), and continuing through its 1978 decision in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Court has consistently held that indemnity and contribution third party claims are "always" covered by ancillary jurisdiction. *Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404. By extending ancillary jurisdiction to Rule 14(a) third party claims, the courts have helped to promote judicial economy, avoid circuity of action, and have encouraged the resolution of multiple claims against multiple parties in a single proceeding—all of which are important goals underlying the Federal Rules of Civil Procedure. The courts have taken this reasonable and pragmatic approach to ancillary jurisdiction despite that Congress has never specifically authorized such an expansion of the scope of federal jurisdiction.

Notwithstanding these compelling policy considerations, the ancillary jurisdiction doctrine may no longer be applicable to third party claims. Congress' silence on ancillary jurisdiction, and Justice Scalia's sweeping language in *Finley* arguably sound the death knell for ancillary jurisdiction in this context.

In *Finley*, the Court noted that federal jurisdiction extends to a claim only if "the Constitution ... give[s] the court capacity to take it, *and an act of Congress ... supplie[s] it.*" *Finley*, 109 S.Ct. at 2006 (quoting *The Mayor v. Cooper*, 6 Wall. 247, 18 L.Ed. 851 (1868)) (emphasis in *Finley*). Absent congressional authorization, the constitutionally authorized power of the federal courts "lies dormant." *Id.*

---

1. I say "presumably" because neither CMN nor Arbyx have alleged a basis of jurisdiction in their complaints. This failure itself is procedurally improper; under Rule 8(a) every pleading that "sets forth a claim for relief, whether ... cross-claim or third party claim, shall contain ... a short and plain statement of the grounds

upon which the court's jurisdiction depends...." Fed.R.Civ.P. 8(a). However, because no party has objected to the pleadings, and because it appears obvious to the court that both CMN and Arbyx base their complaints on ancillary jurisdiction, this procedural error is minor.

Applying this elementary analysis to pendent party claims,[2] the closely divided *Finley* Court held that the power of the federal courts over claims against pendent parties lies dormant. Said the Court, "with respect to the addition of *parties*, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.*, 109 S.Ct. at 2007. Under this restrictive approach to supplemental jurisdiction,[3] a "grant of jurisdiction over claims involving particular parties does *not* itself confer jurisdiction over additional claims by or against different parties." *Id.* 109 S.Ct. at 2010 (emphasis added).

This is precisely the jurisdictional issue presented by a defendant's Rule 14(a) indemnity or contribution claim against an impleaded third party: a federal court seeks to exercise supplemental jurisdiction (*i.e.*, ancillary jurisdiction) over an additional party, "as opposed to [an] addition[al] ... clai[m]...." *Id.* 109 S.Ct. at 2007. Prior to *Finley*, this was unobjectionable. *See Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404. But *Finley* expressly states that a "grant of jurisdiction over claims involving particular parties does *not* itself confer jurisdiction over additional claims by or against different parties." *Id.* 109 S.Ct. at 2010 (emphasis added). Thus, post-*Finley* courts do not have jurisdiction over "additional claims ... against different parties" unless a statute specifically authorizes it.

This proposition likely remains true whether the "additional" parties are "pendent parties," or third parties impleaded for contribution and indemnity.

No statute specifically authorizes ancillary jurisdiction over "additional parties" impleaded for contribution or indemnity under Rule 14(a). And, because the relationship between indemnity/contribution claims and the original plaintiff's claim is one of "mere factual similarity," *see Finley*, 109 S.Ct. at 2008 (quoting *Kroger*, 437 U.S. at 376–77, 98 S.Ct. at 2404), indemnity/contribution claims are not within the "narrow class" of cases that the Court will permit despite the lack of statutory authorization.[4] Thus, it appears that ancillary jurisdiction may no longer cover Rule 14(a) indemnity and contribution claims.

For these reasons, the ancillary jurisdictional basis for the third party claims[5] against Saia and Ryan–Walsh may have been caught in the wide swath *Finley* cut into supplemental jurisdiction. While the *Finley* majority may well have intended to address specifically the pendent party jurisdiction problem, the opinion's sweeping language is undeniable. Thus, its effect on supplemental jurisdiction in general is potentially far-reaching.

## II. *Order*

Arbyx and CMN are ordered to show cause within two weeks of entry of this order why the third party claims against

---

**2.** "Pendent party" claims are nonfederal claims arising out of the same operative facts as the plaintiff's principal action against a federal question defendant, but which the plaintiff asserts against a newly joined additional party. *See generally Baylis v. Marriott Corp.*, 843 F.2d 658 (2d Cir.1988); Annotation, 72 A.L.R.Fed. 191, 197–98 (1985 & Supp.1988); Currie, *Pendent Parties*, 45 U.Chi.L.Rev. 753, 753–55 (1978).

**3.** The term "supplemental jurisdiction" is a general term that correlates the separate but related doctrines of pendent, ancillary, and pendent party jurisdiction. *See generally* Freer, *A Principled Statutory Approach to Supplemental Jurisdiction*, 1987 Duke L.J. 34, 34.

**4.** Clearly, an impleaded third party has no claim "upon contested assets within the court's *exclusive* control," nor is his presence "necessary to

give effect to the court's judgment." *See Finley*, 109 S.Ct. at 2008 (discussing when "ancillary jurisdiction" applies). The justification for permitting factually related (and logically dependent) third party claims is to "'convenience ... the litigants'" and to further "'judicial economy.'" *Id.* (quoting *Kroger*, 437 U.S. at 376–77, 98 S.Ct. at 2404). However, neither is sufficient "'to justify the extension of the doctrine of ancillary jurisdiction.'" *Id.*

**5.** As a technical matter, the Rule 13(g) cross-claims for indemnity and contribution asserted against Ryan–Walsh and Saia by CMN still qualify for ancillary jurisdiction after *Finley*; cross-claims, by definition, are asserted against *existing* parties—not *Finley*-type "additional" parties. But as a practical matter, CMN's cross-claims will have to be dismissed if Arbyx's third party claims are dismissed for lack of jurisdiction.

Ryan–Walsh and Saia should not be dismissed for lack of subject matter jurisdiction. All other interested parties who wish to do so may, within this period, file briefs addressing this issue. The court will not entertain oral argument.