**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation, Plaintiff,**

v.

**C AND A CURRENCY EXCHANGE, INC., an Illinois corporation; Belmont National Bank of Chicago, a national banking association; Continental Bank, N.A., a national banking association; and LaSalle Northwest National Bank, f/k/a Northwest National Bank of Chicago, a national banking association, Defendants.**

**BELMONT NATIONAL BANK OF CHICAGO, Third–Party Plaintiff,**

v.

**David KAHN and Diane Kahn, Third–Party Defendants.**

No. 90 C 454.

United States District Court, N.D. Illinois, E.D.

June 8, 1990.

Edward P. McNeela, Paul A. Brocksmith, McNeela & Griffin, Ltd., Chicago, Ill., for plaintiff.

George B. Collins, Michael G. Holzman, Collins & Bargione, Chicago, Ill., for Belmont Nat. Bank of Chicago and Continental Bank, N.A.

Mark D. DeBofsky, Marvin Berz, Chicago, Ill., for C and A Currency Exchange, Inc.

James Krasny, Markoff, Krasny & Goldman, Chicago, Ill., for LaSalle Northwest Nat. Bank.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

David and Diane Kahn have moved to dismiss the third-party complaint of Belmont National Bank of Chicago under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.Pro. In its complaint, Belmont hopes to recover on a guarantee signed by the Kahns, who are alleged to be the principals of C and A Currency Exchange, Inc., in the event that Belmont is liable to Fidelity and Deposit Company of Maryland in the suit which underlies this matter. More specifically, the Kahns, who are Illinois residents, allegedly guaranteed to pay up to $100,000 for checks tendered to Belmont, a national banking association located in Illinois, by C and A in the event that Belmont was unable to collect on the checks. Fidelity's suit against Belmont presents the argument that Belmont should not have collected on certain checks which Belmont tendered to Fidelity's insured; Belmont apparently believes that some of these checks came by way of C and A, which also is defending against Fidelity's suit.

The Kahns initially argue that Belmont's third-party complaint fails to comply with Rule 8(a). That rule states in part: "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it...." Belmont's complaint does not contain a jurisdictional statement, but Belmont submits that it didn't need one. In Belmont's view, the court already has jurisdiction over its claim under the doctrine of ancillary jurisdiction. Complaints brought under the ancillary jurisdiction of the court generally need not meet Rule 8(a)'s jurisdictional statement requirement. See Charles Alan Wright and Arthur R. Miller, 5 Federal Practice and Procedure § 1207 (West 1969).

The Supreme Court has never articulated a precise definition of ancillary jurisdiction or the related concept of pendent jurisdiction. The term "ancillary" is generally used to describe non-federal claims in a controversy which a party asserts after the filing of the original complaint. See Paul M. Bator et al., Hart and Wechsler's The Federal Courts and the Federal System 1685 n. 1 (Foundation Press 1988). Bel-

mont's action against the Kahns apparently is ancillary, as Belmont has not suggested an independent basis for this court's jurisdiction over it.

Until 1989, many federal courts believed that they had subject-matter jurisdiction over ancillary claims such as that brought by Belmont—essentially, an action for indemnity—where the claim arises out of the same transaction or occurrence. See *Hartford Acc. and Indem. Co. v. Sullivan*, 846 F.2d 377, 380 (7th Cir.1988) (citing cases); *id.* at 382 (acknowledging ancillary jurisdiction with "same-transaction-or-occurrence" limitation found in *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The Supreme Court in *Finley v. U.S.*, ⸺ U.S. ⸺, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), nevertheless suggested that ancillary jurisdiction might not exist. The *Finley* Court ruled that a plaintiff in an action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (1982), may not bring pendent claims against additional parties under that Act unless the plaintiff could establish an independent basis for federal jurisdiction for those claims. In reaching its conclusion, the Court described a "narrow class of cases" in which a federal court could assert jurisdiction over claims which were " 'ancillary' to jurisdiction otherwise properly vested...." These claims included those where "an additional party has a claim upon contested assets within the court's exclusive control" or those "necessary to give effect to the court's judgment...." The Court stated, however, that it had never found jurisdiction

> solely on the basis that the *Gibbs* test has been met. And little more basis than that can be relied on by petitioner here. As in [*Owen Equipment & Erection Co. v.] Kroger*, [437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ], the relationship between petitioner's added claims and the original complaint is one of "mere factual similarity," which is of no consequence since "neither the convenience of the litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction."

*Finley*, 109 S.Ct. at 2008, quoting *Kroger*, 437 U.S. at 376–77, 98 S.Ct. at 2404.

The Kahns suggest that *Finley* prevents this court from exercising jurisdiction over Belmont's third-party complaint, notwithstanding prior judicial acceptance of the doctrine of ancillary jurisdiction. This court disagrees. Part of the court's disagreement stems from the obvious distinctions between *Finley* and this case, although it is not enough for the court to say "*Finley* was *Finley*" in order to avoid its consequences. See *Huberman v. Duane Fellows, Inc.*, 725 F.Supp. 204, 205–06 (S.D. N.Y.1989) (pointing out differences between *Finley* and usual third-party cases). More important to this court is, first, the recognition in many of the Court's recent cases involving ancillary or pendent jurisdiction that the Constitution's limits on the jurisdiction of the federal courts differ from those inherent in the statutes which actually establish such jurisdiction. See, for example, *Kroger*, 437 U.S. at 372, 98 S.Ct. at 2401. *Finley's* focus on the limits of the jurisdictional grant contained within the FTCA suggests to this court that its holding should be regarded as specific to that statute, and not thoughtlessly extended to cases based on the other statutes which grant federal jurisdiction.

The second reason for the court's refusal to dismiss Belmont's claim for lack of jurisdiction lies within *Finley* itself. *Finley* uses the term "ancillary" in two different ways. While it first describes the class of permissible ancillary claims as "narrow," two sentences later the Court quotes from *Kroger*, a case involving federal diversity jurisdiction. *Kroger* has a much wider vision of permissible ancillary claims. *Kroger* gives as one example of these "impleader by a defendant of a third-party defendant ..." *Id.* at 376, 98 S.Ct. at 2404. This court hence hesitates to seize upon *Finley's* ambiguous statement in order to "roll back" the entire area of federal jurisdiction over third-party claims. See *Huberman*, 725 F.Supp. at 207 (expressing same reservation).

This leaves the Kahns' argument that Belmont has failed to state a claim against them. Their contention is that, as Belmont's third-party complaint acknowledges, their liability is contingent on a check being found uncollectible, or perhaps in this case, Belmont being found liable to Fidelity. Neither liability has been established, and thus the Kahns assert that Belmont's action against them warrants dismissal for being premature. The Kahns, however, present no authority for their position. Belmont's claims against them are in accord with federal procedure. Rule 14(a) expressly allows a defending party to serve a person not party to the original action "who is or *may be* liable" to the defending party "for all or part of the plaintiff's claim" against the defending party. (Emphasis added) The court also has found nothing in Illinois law, the law which allegedly covers the construction of the Kahn's guarantee, see Third–Party Complaint, Ex. A, which suggests that a beneficiary of a guarantee may not file such an anticipatory action by way of a third-party complaint. The court thus will deny the Kahns' motion to dismiss under Rule 12(b)(6).

The court denies the Kahns' motion to dismiss the third-party complaint of Belmont National Bank.